# EXHIBIT 2

Filing # 137562985 E-Filed 10/29/2021 02:59:03 PM

IN THE CIRCUIT COURT OF THE FOURTH JUDICIAL CIRCUIT
IN AND FOR NASSAU COUNTY FLORIDA

CASE NO:   2021-CA-000305
DIVISION:  Circuit Civil

**CARLY A. VOLP, as Personal**
**Representative of the Estate of**
**KYLE ROBERT VOLP,**

       **Plaintiff,**

**v.**

**FLORIDA SHERIFFS' RISK MANAGEMENT FUND,**
**ANDREW WILLIAM SASSER, as an individual,**
**NASSAU COUNTY SHERIFF'S OFFICE**
**[Bill Leeper, in his capacity as Sheriff**
**of Nassau County, Florida],**

       **Defendants,**

## AMENDED COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, CARLY A. VOLP, as a Personal Representative of the Estate of KYLE ROBERT

VOLP, hereinafter referred as "VOLP", through the undersigned counsel, sues the Defendants,

FLORIDA SHERIFF'S RISK MANAGEMENT FUND, hereinafter referred as "FUND",

ANDREW WILLIAM SASSER, hereinafter referred as "SASSER", and NASSAU COUNTY

SHERIFF'S OFFICE, hereinafter referred as "NCSO", for declaratory relief and alleges as

follows:

## JURISDICTION AND VENUE

1. This is an action for declaratory relief pursuant to Florida Statute § 86.011 filed for the

purpose of determining an actual and present controversy between the parties as to the scope to

the FUND's obligation, to defend and indemnify SASSER and NCSO for the claim asserted by

VOLP in connection to the unreasonable and excessive use of force that occurred in Nassau County Jail.

2. The Plaintiff is a citizen and resident of Nassau County, Florida and is otherwise sui juris.

3. The FUND is a self-insurance plan created and existing pursuant to the provisions of Fla. Stat. §768.28.

4. Defendant SASSER was employed as a Sworn Corrections Deputy for the Defendant NCSO and was acting under the direction and control of NCSO, in such capacity as an agent, servant, and employee of NCSO. Upon information and belief and at all times material hereto, Defendant SASSER participated in the unconstitutional violations and other wrongful acts that occurred on July 1, 2015, at which time he was acting within the course and scope of his employment under color of state law. SASSER is and was a resident of the State of Florida and is otherwise sui juris.

5. Defendant NCSO (Bill Leeper, in his capacity as Sheriff of Nassau County, Florida) is an entity, corporate and political, duly organized under the laws of the State of Florida. NCSO is the governmental entity responsible, as a matter of law, for the actions of its officials, agents, and employees, and was responsible for their training, supervision, and conduct. NCSO is also responsible for ensuring that its police personnel obey the laws of the State of Florida and ensuring that its rules and regulations are followed and enforced.

6. Jurisdiction is proper as the amount in controversy, exclusive of interest and attorney's fees, is in excess of $30,000.00.

7. Venue is proper in the Circuit Court of the Fourth Circuit in Nassau County, Florida, as the incident occurred in Nassau County Jail and one or more of the defendants reside there.

## THE FACTS

8. On July 1, 2015 Defendant NCSO participated in and was covered under the above-mentioned self-insurance plan. Attached hereto as Plaintiff's Exhibit 1 is a copy of the Florida Sheriff's Self-Insurance Program Law Enforcement Liability Coverage Agreement (hereinafter referred to as "the Agreement") that was in effect at the time of the subject incident.

9. The Agreement is intended to cover and indemnify its participating members from, *inter alia*, liability for "damages or claims expenses because of claims for false arrest, assault and battery, false imprisonment . . . and violation of constitutional rights . . . ," as more fully set forth in Section II of the Agreement.

10. Pursuant to specific terms and limitations of the Agreement, a deputy officer, or employer of any Sheriff of a County in the State of Florida who elects to participate in the Fund is considered to be a "Covered Member" under the Agreement.

11. During the months of June and July 2015, Defendant NCSO employed Defendant SASSER as a Deputy.

12. During the months of June and July 2015, KYLE ROBERT VOLP was an inmate at the Nassau County Jail. During this period of time, Defendant SASSER undertook a course of conduct which caused harm to and violated certain civil rights of KYLE ROBERT VOLP.

13. As a result of such conduct, KYLE ROBERT VOLP filed suit against Defendants SASSER and NCSO in the United States Middle District of Florida Jacksonville Division under case number 3:18-cv-689-J-32JRK. A copy of the complaint is attached hereto as Plaintiff's Exhibit 2.

14. Notice of KYLE ROBERT VOLP's claim and filing of the lawsuit was timely provided to all Defendants.

15. Defendant, FUND, thereafter, denied coverage for Defendant SASSER for the claims made against him in the Complaint and has continuously failed to provide him with a defense.

16. Defendant, FUND, pursuant to the terms and conditions of the Agreement and Florida law, had a duty to provide a defense to its covered member, Defendant SASSER, based on the allegations contained within the four corners of the Complaint filed against him by the Plaintiff.

**WHEREFORE**, Plaintiff, CARLY A. VOLP, as a Personal Representative of the Estate of KYLE ROBERT VOLP, demands entry of a judgment declaring the rights of the parties under the subject contract.

Respectfully submitted,

GREGORY W. LINEBERRY (FL Bar No. 181552)
NELSON E. SIERRA (FL Bar No. 124247)
ALEXANDER D. NOBREGAS (FL Bar No. 1003676)
JONATHON J. CARTER (FL Bar No. 1031010)
RONALD E. SHOLES, P.A.
4981 Atlantic Boulevard
Jacksonville, Florida 32207
Ph: 904-309-7801 Fax: 904-721-7474
Primary Email:
RonSholesPA-Team1-Eservice@youhurtwefight.com
*Attorneys for Plaintiff*

# EXHIBIT 1

## FLORIDA SHERIFFS SELF INSURANCE PROGRAM
## LAW ENFORCEMENT LIABILITY COVERAGE AGREEMENT

### PLEASE READ THE LAW ENFORCEMENT LIABILITY COVERAGE AGREEMENT CAREFULLY

### THESE COVERAGE AGREEMENT PROVISIONS, WITH THE DECLARATIONS INCLUDED, COMPLETE THE COVERAGE AGREEMENT

## I. DEFINITIONS

1.     The following definitions shall be applicable to this Coverage Agreement (Agreement) and the operation of the Program:

a)     "**Accident**" and/or "**Incident**" means any actual or alleged act, inaction, error or omission, neglect or breach of duty, and includes (1) all Damages and (2) all causes of injuries or damages that result, by a Covered Member arising out of the Covered Member's occupancy, maintenance or use of official premises and/or the Covered Member's operations in the performance of his/her official law enforcement duties that results in: (1) Bodily Injury; (2) death; or (3) Property Damage.

b)     "**Automobile**" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any machinery or apparatus attached thereto.

c)     "**Bodily Injury**" means bodily injury, sickness or disease sustained by any person, including death at any time resulting therefrom.

d)     "**Damages**" includes damages for death and for care and loss of service resulting from Bodily Injury and Damages for loss of use of property resulting from Property Damage. Damages do not include costs or expenses necessitated by actions for jail or prison facility improvement or correction of deficiencies in such jail or prison.

e)     "**Fund**" means the Florida Sheriffs Risk Management Fund.

f)     "**Program**" means the Florida Sheriffs Self Insurance Program – Law Enforcement Liability.

g)     "**Occurrence**" means an Accident or Incident or more than one related Accidents or Incidents, including any continuous or repeated exposure to similar or related general harmful conditions, acts, or inactions, or any continuous or repeated damages sustained from related general harmful conditions, acts, or inactions, which happens initially during an Annual Agreement Period.   An Occurrence includes all losses or damages that are attributable directly or indirectly to one Accident or Incident or to more than one similar or related Accidents or Incidents.  All such losses will be added together and the total amount of such losses will be treated as one Occurrence irrespective of the period of time or area over which such losses or damages occur.

For purposes of Claims which involve continuous exposure to similar or related general harmful conditions, acts, or inactions, the date of loss for such Claims shall be the first identifiable date of such continuous or repeated exposure. For purposes of claims which involve continuous or repeated damages sustained from related general harmful conditions, acts, or inactions, the date of loss for such Claims shall be the first identifiable date of the first damage sustained.

A single Occurrence includes:

(1)     All injuries sustained, whether adjudged to be related or not, from all acts or inactions by all Covered Members in connection with investigating, pursuing, apprehending, arresting, seizing, questioning or interrogating, caring for or rendering aid to, transporting, and/or delivering to jail (or other facility) a person. Delivery of a person to jail (or other facility) encompasses the time from arrival at the jail (or other facility), the entirety of the booking process, and ends upon the completion of the jail booking process (or, for other facilities, the receiving process such that the facility accepts custody of the person from the covered members). Delivery of a person to a jail (or other facility) also encompasses all stops, including arrival to a medical or mental health treatment facility for treatment before the person may be booked into a jail (or other facility), or detours before arrival at the jail (or other facility).

(2)     All injuries sustained, whether adjudged to be related or not, from all acts or inactions by all Covered Members concerning or responding to any event, party, riot, demonstration, protest, or other gathering, whether planned or spontaneous in nature, regardless of what time the Covered Members arrived or took action and without regard to whether the claimants had any involvement, including as a participant, invitee, or spectator, or no involvement in the event, party, riot, demonstration, protest, or other gathering.

h)     "**Property Damage**" means an injury to or destruction of tangible property, including partial or total loss through the disappearance thereof, by theft or other means, all of the foregoing being subject to further limitations contained elsewhere in this Agreement.

i)     "**Sheriff**" means the duly elected or appointed Sheriff of a County in the State of Florida who elects to participate in the Program.

j)     "**Managers**" means the Sheriffs properly elected to the Board of Managers of the Fund.

k)     "**Covered Member**" means the Sheriff and all his deputies, officers and employees who fall within the definitions of High Hazard, Medium Hazard and Low Hazard as outlined herein.

l)     "**Annual Agreement Period**" means any one-year period beginning 12:00 midnight, October 1st, and ending 11:59 pm, September 30 the following year.

m)   **"High Hazard"** includes, but is not limited to, the following:
(1) a Sheriff, his deputies, officers, volunteers and employees whose regular duties relate directly to either a) the enforcement of the criminal law, including, but not limited to, those persons who conduct crime-preventive control, investigate allegations of criminal violations, make arrests, issue criminal process, or, b) detain persons prior to arraignment or detain, control, correct or rehabilitate individuals, whether incarcerated or not; (2) any attorney employed as full time legal advisor to the Sheriff and who has no outside legal practice;   (3) any nurse and/or physician's assistant who is an employee of and paid by the Sheriffs Office; (4) physicians who are either employed by, or under contract with, a Sheriff to render medical care to inmates in the custody of that Sheriff.  Physicians shall be included within this definition only under the following conditions: a) such physician shall have a medical malpractice insurance policy with minimum limits of $750,000, which is generally applicable to the services being provided the Sheriff; b) a copy of said policy, certificate of insurance, or other acceptable form or proof of coverage shall be provided each year to the Fund's Administrator and shall contain a provision requiring that the Fund Administrator be notified within thirty (30) days of cancellation or replacement of said policy; c) the coverage provided by the Program shall only extend to civil rights claims not otherwise covered by said physician's medical malpractice insurance policy; (5) dogs used for patrol, criminal/suspect apprehension, guarding of persons or property, building searching etc., subject to having met the Program's guideline requirements.

n)   **"Medium Hazard"** includes, but is not limited to, the following:
(1) deputies, officers, volunteers and employees of a Sheriff whose regular duties do not involve direct enforcement of the criminal laws; (2) those persons who serve civil rather than criminal process; (3) those persons who act as auxiliary officers, whether paid or unpaid, but who have some law enforcement responsibility; and (4) special deputies or police, jeep or horse posse, and search or rescue squads.

o)   **"Low Hazard"** includes, but is not limited to, the following:
(1) volunteers and those persons employed or appointed by a Sheriff whose primary duties relate only indirectly to the enforcement of criminal laws; (2) persons who perform clerical and/or recordkeeping duties; (3) persons who perform laboratory, photographic and radio dispatching duties; (4) persons who perform licensing examinations, fingerprinting, bailiff duties; (5) persons who perform food service, maintenance and custodial tasks not having direct control over inmates; and (6) polygraph operators, but only while performing their duties on behalf of the Covered Member.

p)   **"Ultimate Net Loss"** means the maximum amount, in the aggregate, for all Claims, settlements, judgments, payments and legal costs, expenses and fees which will be paid under this Agreement, on account of any one Sheriff for all Claims which occurred during any one Annual Agreement Period between 12:00 midnight, October 1, and 11:59 pm the following September 30th.

q)   **"Claim"** or **"Claims"** means:
(1) a demand for Damages, money, satisfaction, action; (2) notice from any person, or person's representative indicating an intent to make a demand for Damages, money,

satisfaction, action; or (3) notice in writing from a Covered Member of an Incident or Occurrence which may become a demand for Damages, money, satisfaction, action at some future date.

## II. COVERAGES, DEFENSE AND SETTLEMENT

The assets of the Program shall be used to provide self insurance benefits, pursuant to Claims contemplated within this Agreement, to the Covered Member as follows:

1.     To pay on behalf of a Covered Member claims expenses and all sums which the Covered Member shall become legally obligated to pay as Damages because of (a) Bodily Injury, or (b) Property Damage caused by an Occurrence and arising out of the Sheriff's occupancy, maintenance or use of official premises and/or the Sheriff's operations in the performance of his official law enforcement duties during the Annual Agreement Period.

2.     To defend any suit against a Covered Member seeking Damages on account of such Bodily Injury or Property Damage.

3.     To pay Damages assessed against a Covered Member as punitive damages unless determined by a court to be contrary to public policy.

4.     To pay on behalf of a Covered Member all sums which a Covered Member shall become legally obligated to pay as Damages or claims expenses because of Claims for false arrest, assault and battery, false imprisonment, malicious prosecution, false or improper service of process, libel or slander, intentional infliction of emotional distress, defamation of character, violation of property rights, wrongful eviction, wrongful entry, humiliation and invasion of the rights of privacy and violation of constitutional rights, growing out of the law enforcement duties of a Covered Member.

5.     To pay claims expenses, including fees charged by an attorney designated by the Program; all other fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a Claim if incurred by the Program; fees charged by any attorney designated by the Covered Member with the written consent of the Program; claimants' attorneys fees and costs assessed by court order or agreed upon through settlement. However, claims expenses do not include salary charges of regular employees or officials of the Program;

6.     To pay premiums on appeal bonds required in any Claim brought against a Covered Member alleging a Wrongful Act and/or premiums on bonds to release attachments for an amount not in excess of the limit of liability, but without any obligation to apply for or furnish any such bonds.

7.     To pay reasonable expenses incurred by a Covered Member for first aid to others at the time of the Accident for Bodily Injury to which this Agreement applies.

8.     To pay any costs (which expression shall mean all investigations, adjustments and legal expenses) incurred in the investigation, adjustment and defense of any Claims, suits or

proceedings which may be brought against a Covered Member within the purview of this Agreement, even if such Claims, suits or proceedings are groundless, false or fraudulent. Costs shall not include any operational expenses of the Sheriff. Nor shall costs increase the total benefits available under this Agreement.

9.    To pay for defense costs and legal expenses subject to the limit as stated in the Declarations for any Claims brought against a Sheriff arising out of jail or prison facility deficiencies or conditions or other class action suits asking for corrections of such deficiencies or conditions in such jail or prison facility. Any amount expended hereunder shall not reduce the annual aggregate limit of any Sheriff.

10.    To pay on behalf of a Covered Member all sums subject to the limits of liability as stated in the Declarations which that Covered Member may be held legally liable to pay as Damages with respect to Property Damage to structures or portions thereof, rented or leased to said Sheriff, including fixtures permanently attached thereto, if such Property Damage is caused by fire as a result of the acts or omissions of the Sheriff. This coverage shall be excess over any valid and collectable property insurance (including any deductible portion thereof) available to the Sheriff, such as, but not limited to, Fire, Extended Coverage, Builder's Risk Coverage, or Installation Risk Coverage, and Other Insurance Conditions of this Agreement as amended accordingly.

11.    To pay on behalf of a Covered Member all sums which that Covered Member may be held legally liable to pay as Damages with respect to liability assumed by the Sheriff under any contract or agreement, including mutual law enforcement agency agreements between political subdivisions and contract law enforcement agencies, so long as said contract or agreement is disclosed to and accepted by the Program. For any contract or agreement, other than mutual law enforcement agency agreements between political subdivisions and contract law enforcement agencies, payment is subject to the sublimits of liability as stated in the Declarations.

12.    To pay on behalf of a Covered Member all sums which that Covered Member may be held legally liable to pay as Damages with respect to private duty assignments of a Covered Member, provided that any such private duty assignment has the fully informed consent of the Sheriff and said assignment is within the normal scope of duties and proper jurisdiction of the Covered Member.

13.    To pay on behalf of a Covered Member all sums which that Covered Member may be held legally liable to pay as Damages with respect to property in the care, custody or control of the Sheriff or as to which the Sheriff is for any purpose exercising physical control. If there is other insurance against any Incident loss or Claim for which coverage is provided under this paragraph, the coverage provided under this paragraph shall be deemed to be excess over and above the applicable limits of all such other insurance.

14.    To pay on behalf of a Covered Member all sums which that Covered Member may be held legally liable to pay as Damages as a result of conducting firearms training for members of the public during structured courses, including but not limited to, requalification courses, citizens' academies, concealed weapons certification courses and firearms safety

courses.  Payment is subject to the sublimits of liability as stated in the Declarations.

THE SELF-INSURANCE BENEFITS ABOVE ARE PROVIDED SUBJECT TO THE FOLLOWING TERMS AND CONDITIONS:

1. Even if any or all of the allegations of the suit are groundless, false or fraudulent, and the Managers make such investigation and settlement of any Claim or suit as the Managers may deem expedient, the Program shall not be obligated to pay any Claim, claims expenses or judgment or to defend any suit after the applicable limit of the Program's liability or aggregate liability has been exhausted by payment of judgments, settlements or claims expenses.

2. The Managers may conduct in the name of the Covered Member the defense of any Claim, and prosecute in his name for the benefit of the Program any Claim for indemnity or Damages or otherwise against any third party. The Managers shall have full discretion in the handling of any Claim, and the Covered Member shall give all information and assistance as the Managers may reasonably require.

3. The assets of the Program shall not be called upon in contribution and are to only pay any loss if and so far as not recoverable under any other insurance.

4. The insolvency or bankruptcy of a Sheriff shall not release the Program from any obligations hereunder.

5. The total limit of liability of the Program for any benefits or aggregate limits of liability shall be no more than those as stated in the Declarations.

### III. LIMITS OF LIABILITY

Regardless of the number of A) Covered Members under this Agreement; or B) persons or organizations who sustained Damages payable under this Agreement; or C) Claims made or suits brought on account of benefits afforded by this Agreement, the Program's liability shall in no event exceed the amounts outlined in the Coverage Declarations page provided to each Program Member:

1. In respect of any one claimant for any one Incident, including claims expense;

2. In respect of any one Incident involving more than one claimant, subject to the aforesaid limits in respect of any one claimant for any one Incident, including claims expenses; and

3. The aggregate limit of the Program's liability for all Incidents and Occurrences per Sheriff during any one Annual Agreement Period shall not exceed the aggregate amount stated in the applicable Coverage Declarations page, which aggregate includes claims expenses as defined herein.

Exhaustion of aggregate limits under the reinsurance policy or policies issued to the Program

which may not necessarily exhaust the Program's self-insured retention aggregate, shall not preclude benefits which are otherwise provided under this Program Agreement within the limits of the Program's self-insured retention limits.

## IV. EXCLUSIONS

1.    This Agreement, and the assets of the Program, shall not be used and shall not apply to the following:

        a)    To Bodily Injury or Property Damage arising out of the ownership, maintenance, management, operation, use, control, loading or unloading of any Automobile or aircraft owned or operated by, or rented or loaned to, the Covered Member; or operated by any person in the course of his employment by the Covered Member. However, this exclusion does not apply to exclude from coverage Claims arising out of the ownership, operations, or use of an Automobile:

        (i)  During a vehicular pursuit of a fleeing Automobile, so long as no collision results between the Automobile owned, operated, or used by a Covered Member and the claimant or property of the claimant; or

        (ii)  Where the Covered Member driver of said Automobile intentionally collides with another Automobile in an attempt to apprehend an occupant of that Automobile or said Automobile driver intentionally collides with any person in an attempt to apprehend such person, when necessary to prevent loss of life and to protect the public.

        b)    Liability due to war, whether or not declared, civil war, insurrection, rebellion or revolution or to any act or condition incident to any of the foregoing.

        c)    To Bodily Injury or Property Damage for which the Sheriff or a Covered Member or their indemnity may be held liable as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages or as an owner or lessor of premises used for such purpose by reason of the selling, serving or giving of an alcoholic beverage: (1) in violation of any statute, ordinance or regulation; (2) to a minor; (3) to a person under the influence of alcohol; or, (4) which causes or contributes to the intoxication of any person.

        d)    To any obligation for which the Sheriff or any insurance carrier as his insurer may be held liable under any workers' compensation, unemployment compensation or disability benefits law or under any similar law.

        e)    To Bodily Injury or Property Damage to any Sheriff or Covered Member, unless otherwise specifically provided for under other provisions of this Agreement, arising out of and in the course of their employment or appointment.

        f)    To any Claim of a Covered Member or any other officer, employee, agent or applicant arising out of the Covered Member's employment policies or practices, including, but not limited to application for employment, refusal to employ, termination of employment, coercion, demotion, evaluation, reassignment, discipline, defamation,

harassment (including sexual harassment), humiliation, discrimination or violation of civil rights.

g)      To any Claim by one Covered Member under this Agreement against any other Covered Member of this Agreement.

h)      To any Claim by any person related to a Covered Member by blood or marriage, or to any Claim by any person residing in the household of a Covered Member at the time of the Incident or event giving rise to the Claim, against any Covered Member of this Agreement except as follows:

The Program agrees to reimburse reasonable expenses of such a person under the following circumstances:

1.      The expenses are excess over any other collectible insurance; and

2.      The injury to such person occurred at the home of the Covered Member as a result of a K-9 or item of equipment furnished and/or assigned to the Covered Member by a Sheriff; and

3.      The expenses reimbursed are subject to the limit as stated in the Declarations.

i)      To Property Damage to: (1) property owned or occupied by or rented to the Sheriff; and, (2) property used by the Sheriff.

j)      To Property Damage to premises alienated by the Sheriff arising out of such premises or part thereof.

k)      To Property Damage to the Sheriff's products arising out of such products or any part of such products.

l)      Property Damage to work performed by or on behalf of the Sheriff arising out of the work or any portion thereof or out of the materials, parts or equipment furnished in connection therewith.

m)      To Claims against the Sheriff or any other Covered Member for acts or omissions of a High Hazard, Medium Hazard or Low Hazard officer or employee unless such High Hazard, Medium Hazard or Low Hazard officer or employee has been included under the provisions of this Agreement, pursuant to the applicable provisions hereon.

n)      To Claims against the Sheriff or any other Covered Member alleging that he has committed a fraudulent, dishonest, sexual or criminal act. This exclusion shall not apply to Claims of vicarious liability against the Sheriff alleging fraudulent, dishonest, sexual or criminal acts by one or more of his deputies or employees.

o)     To Claims against the Sheriff or any other Covered Member who commits, or is alleged to have committed, any acts of sexual assault or sexual battery.

p)     To Claims arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, flames, acids, alkalies, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants in or upon land, the atmosphere or any water course or body of water.

q)     To Claims or damage caused by nuclear reaction or nuclear radiation or radioactive contamination, whether they directly or indirectly result from a Sheriff's peril under this Agreement.

r)     To Claims, actions, suits or proceedings against the Sheriff or any other Covered Member seeking solely injunctive, mandamus, declaratory relief, equitable relief, costs and/or attorneys fees; or wages or other employee compensation, overtime or similar Claims, even if designated as liquidated damages, under any federal, state or local statutes, rules, ordinances or regulations; or Claims arising from collective bargaining agreements.

s)     To Claims which are insured by another valid policy or policies, including but not limited to, Claims covered under the Public Officials Liability, Automobile or other coverages offered by the Florida Sheriffs Risk Management Fund, or any other self insurance program or insurance policy, or which shall be deemed uninsurable under the law pursuant to which this Agreement shall be construed.

t)     To any Claim against a Covered Member brought under the Drivers Privacy Protection Act (DPPA), 18 U.S.C. § 2721-2725, or to any Claim against a Covered Member alleging the Covered Member unlawfully accessed, used, or disclosed personal information of another person obtained from D.A.V.I.D. (Driver and Vehicle Information Database). This exclusion shall not apply to Claims against the Sheriff for vicarious liability alleging that one or more of the Sheriff's deputies or employees (1) violated the DPPA or (2) unlawfully accessed, used or disclosed personal information of another person obtained from D.A.V.I.D.

2.     The Managers or their authorized agents, in their discretion, shall determine whether a Claim arises out of or is contributed to by any of the above-noted exclusions from coverage, and should such a determination be made, the Sheriff or other Covered Member shall be immediately so notified, and shall also be notified that the Program will not, from that point forward, provide any further defense to such Claim or action. Until a determination of noncoverage is made, the Program shall provide a full defense under the terms of this Agreement, with a full or partial reservation of all rights if warranted, it being understood that in certain circumstances a determination of noncoverage may not be made until final judgment or other final judicial action. A Sheriff or other Covered Member aggrieved by any determination made pursuant to this paragraph may seek relief under the provisions of the applicable Interlocal Agreement.

## V.  CLAIM REPORTING

A Covered Member, upon knowledge of any Occurrence which might give rise to a Claim hereunder, or upon receipt of a Claim or a verbal or written inquiry or request for information relating to an Occurrence which might give rise to a Claim, shall give immediate written notice to the Managers or their designees and such notice shall be given within thirty (30) days from receipt of such information. This notice shall be furnished prior to any information being provided to the potential claimant or their investigator, representative, or lawyer. Any Covered Member who receives or has served upon him a summons, complaint or other legal document or pleading relating to a Claim against him shall immediately notify the Program of said summons, complaint or other legal document or pleading and immediately forward a copy of all documents received to the Program. Any Covered Member against whom a Claim is asserted shall cooperate fully and completely with the Program and/or counsel assigned by the Program to defend such Claim, shall confer with counsel upon reasonable request, shall furnish all information reasonably requested by the Program and/or counsel, and shall personally appear at all court proceedings when advised by counsel.

Notification of a Claim, inquiry or request should be provided the Program no later than thirty (30) days after said Occurrence or receipt of the Claim, inquiry or request.  Notification of a summons, complaint or other legal document or pleading, and copies of any documents received, should be provided the Program no later than five (5) days after receipt of the summons, complaint or other legal document or pleading. Notification in either event shall be in writing and shall be furnished to the Program prior to any information being provided to the potential claimant, his investigator, representative, or attorney. The time limits outlined are guidelines to be followed, although there may be excusable reasons why such a guideline cannot be met from time to time. In the event said guidelines are not met on specific Claims, the failure to timely report said Claims may result in a reservation of rights as to coverage for those Claims in the event the position of the Program and defense of the Claims are jeopardized by said delay. Further, continued failure to meet reporting guidelines or to cooperate with defense counsel appointed by the Program may result in denial of coverage and/or denial of payment of any benefits otherwise payable hereunder. Continual or inexcusable failure to meet reporting guidelines and failure to cooperate with defense counsel appointed by the Program shall also be grounds for termination of a Sheriff from participation in the Program.

In the event of a Claim occurring likely to involve the assets of the Program, the Covered Member shall not make any payment, assume any liability or incur any expense without the consent of the Program being first obtained.



## FLORIDA SHERIFFS SELF INSURANCE PROGRAM

### LAW ENFORCEMENT LIABILITY COVERAGE DECLARATIONS

#### Certificate Number: 15-FSRMF-45

**COVERED MEMBER:** Nassau County Sheriff's Office

**PRINCIPAL ADDRESS:** 76001 Bobby Moore Circle, Yulee, FL 32097

**ANNUAL AGREEMENT PERIOD:** October 01, 2014

**EXPIRATION DATE:** October 01, 2015

**LEL REINSURANCE RETROACTIVE DATES:**

| | |
|---|---|
| FIRST MILLION: | October 01, 1985 |
| SECOND MILLION: | October 01, 1988 |
| THIRD MILLION: | October 01, 1998 |

**DEDUCTIBLE:** 0.00

THIS DECLARATIONS PAGE IS ISSUED TO THE COVERED MEMBER NAMED ABOVE, TO IDENTIFY THE ANNUAL AGREEMENT PERIOD AS WELL AS THE LIMITS OF COVERAGE AFFORDED. ALL TERMS, LIMITS, DEFINITIONS, REGULATIONS, CONDITIONS, EXCLUSIONS, AND LIMITATIONS OF THE APPLICABLE SELF INSURANCE COVERAGE AGREEMENT WHICH ACTUALLY AFFORDS COVERAGE BY VIRTUE OF PARTICIPATION IN THIS SELF INSURANCE PROGRAM BY THIS PARTICIPATING COVERED MEMBER APPLY. THIS DECLARATIONS PAGE DOES NOT INCREASE, AMEND, OR MODIFY THE COVERAGE OTHERWISE PROVIDED UNDER THE APPLICABLE SELF INSURANCE COVERAGE AGREEMENT ATTACHED HERETO. THE LIMITS SET FORTH UNDER THIS AGREEMENT APPLY ONLY TO THE EXTENT THAT EXCESS LIMITS ARE COLLECTABLE FROM REINSURERS COVERING THIS AGREEMENT. IN CONSIDERATION OF THE PAYMENT OF THE CONTRIBUTION AND IN RELIANCE UPON THE STATEMENT IN THE DECLARATIONS AND THE APPLICATION FOR COVERAGE HEREUNDER AND SUBJECT TO THE INSURANCE AGREEMENTS, DEFINITIONS, EXCLUSIONS, AND CONDITIONS OF THIS SELF INSURANCE COVERAGE AGREEMENT, THE LIMITS OF LIABILITY AFFORDED FOR THE ANNUAL AGREEMENT PERIOD ARE AS FOLLOWS:

| LAW ENFORCEMENT LIABILITY | $5,000,000 Per Occurrence |
|---|---|
| | $10,000,000 Annual Aggregate |
| **SUBLIMITS:** | |
| Contracts/Agreements | $1,000,000 Per Person, Per Occurrence, Annual Aggregate |
| Jail Deficiencies Defense Costs/Legal Expenses | $100,000 Per Occurrence |
| Property Damage to Structures | $50,000 Per Occurrence |
| Claim by Family Member/Household Member | $25,000 Per Any One Person |
| Firearms Training | $1,000,000 Per Person, Per Occurrence, Annual Aggregate |

### CONTRIBUTION PER EXPOSURE CATEGORY

| High Hazard | 159 | $784.56 | $124,745.04 |
|---|---|---|---|
| K-9's (Apprehension) | 0 | $784.56 | $0.00 |
| Medium Hazard | 29 | $453.48 | $13,150.92 |
| Low Hazard | 94 | $223.60 | $21,018.40 |
| Volunteers | 64 | $40.80 | $2,611.20 |
| Subtotal | 346 | | $161,525.56 |
| Multi-Program Discount | | | ($4,845.77) |
| **TOTAL ANNUAL CONTRIBUTION** | | | $156,679.79 |

SIGNED: _____

2600 Centennial Place, Suite 200, Tallahassee, FL 32308
P.O. Box 12909, Tallahassee, FL 32317
Telephone: (850) 320-6880   Facsimile: (850) 320-6939

# EXHIBIT 2

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILL DIVISION

KYLE ROBERT VOLP,                                   CASE NO.:

       Plaintiff,

v.

ANDREW WILLIAM SASSER, as an individual,
NASSAU COUNTY SHERIFF'S OFFICE
[Bill Leeper, in his capacity as Sheriff
of Nassau County, Florida],

       Defendants.

_____/

## PLAINTIFF'S AMENDED COMPLAINT

COMES NOW Plaintiff, KYLE ROBERT VOLP (hereinafter "VOLP"), by and through

the undersigned attorneys, and hereby files this Complaint against ANDREW WILLIAM SASSER

(hereinafter "SASSER"), in his Individual Capacity, for the acts that occurred during the course

and scope of his employment with Defendant, the NASSAU COUNTY SHERIFF's OFFICE [Bill

Leeper, in his capacity as Sheriff of Nassau County, Florida] (hereinafter "NCSO").

## INTRODUCTION

This civil action arises from an incident that occurred on or about July 1, 2015, while VOLP

was placed in an individual cell as a "medical watch" inmate, in or near the booking section of the

facility. Defendant SASSER used unreasonable and excessive force against Plaintiff VOLP when

he forcibly pushed VOLP into a cinderblock wall twice, struck him with Defendant's knee, and

punched him.

Plaintiff VOLP brings federal constitutional claims against Defendant SASSER, in his individual capacity, for committing acts under color of law that deprived Plaintiff of his rights under the Constitution and the laws of the State of Florida by using excessive and unreasonable force against the Plaintiff. Further, Plaintiff brings federal constitutional claims against NCSO as the supervisory entity responsible for the conduct, training, and supervision of the Sheriff's Deputies under its charge. NCSO failed to properly train Sheriff's Deputies in the appropriate methods, proper procedures, and protocols with respect to the use of force. NCSO had a policy and custom that constituted deliberate indifference to the Plaintiff's constitutional rights, and NCSO's policy and custom deprived the Plaintiff of his rights under the Constitution and the laws of the State of Florida, resulting in the use of excessive and unreasonable force. Lastly, Plaintiff brings a negligent retention claim against NCSO for retaining Defendant SASSER.

### JURSIDICTION AND VENUE

1. Plaintiff in this action seeks relief under the Fourth and Fourteenth Amendments of the United States Constitution, and the Civil Rights Act of 1871, 42 U.S.C. § 1983,

2. Venue is proper in the Middle District Court of Florida, pursuant to 28 U.S.C. § 1391(b), as all Defendants work and/or reside in this District, and all of the acts and omissions giving rise to this action occurred in Nassau County.

3. The Court has federal question jurisdiction over Plaintiff's federal law claims, pursuant to 28 U.S.C. § 1331, 1343(a)(3). Plaintiff's state law claims are related to these federal claims and form a part of the same case of controversy. The Court accordingly has supplemental jurisdictions over Plaintiff's state law claims, pursuant to 28 U.S.C. § 1367(a).

4.  All conditions precedent to the maintenance of this action, including those set forth in Florida Statute § 768.28, have been performed, have occurred prior to its institution, or have been waived.

## PARTIES

5.  At all times material hereto, Plaintiff VOLP was a resident of Nassau County, Florida, and is otherwise sui juris.

6.  At all times material hereto, Defendant SASSER was employed as a Sworn Corrections Deputy for the Defendant NCSO and was acting under the direction and control of NCSO, in such capacity as an agent, servant, and employee of NCSO. Upon information and belief and at all times material hereto, Defendant SASSER participated in the unconstitutional violations and other wrongful acts that occurred on July 1, 2015, at which time he was acting within the course and scope of his employment under color of state law. SASSER is and was a resident of the State of Florida and is otherwise sui juris.

7.  At all times material hereto, Defendant NCSO [Bill Leeper, in his capacity as Sheriff of Nassau County, Florida] is an entity, corporate and political, duly organized under the laws of the State of Florida. NCSO is the governmental entity responsible, as a matter of law, for the actions of its officials, agents, and employees, and was responsible for their training, supervision, and conduct. NCSO is also responsible for ensuring that its police personnel obey the laws of the State of Florida and ensuring that its rules and regulations are followed and enforced.

8.  Plaintiff VOLP sues Defendant SASSER in his individual capacity.

## FACTUAL ALLEGATIONS

*Events That Occurred On July 1, 2015*

9. On or about July 1, 2015, Plaintiff VOLP was incarcerated at the Nassau County Jail and Detention Center. VOLP was placed in an individual cell as a "medical watch" inmate, in or near the booking section of the facility.

10. While lying on a mattress inside an individual cell, Defendant SASSER, a lawfully sworn Corrections Deputy, employed by NCSO entered VOLP's individual cell with an aggressive and hostile demeanor. Defendant SASSER continued to approach and shout at VOLP, before shoving two hands powerfully into VOLP's chest forcing him into a cinderblock wall. Defendant SASSER acted without warning or any reasonable use of force. VOLP's upper back, neck, and head impacted violently with the wall.

11. VOLP immediately sat up on the mattress and the Defendant SASSER closed in again on him continuing his verbal rant, and struck Plaintiff VOLP's right hand.

12. VOLP stood up and Defendant SASSER continued his verbal attack before lunging forward grabbing VOLP with both arms and slammed VOLP's back into said cinderblock wall, and then to the side, striking VOLP's head on an adjacent cinderblock wall.

13. VOLP was then picked up off his bed by Defendant SASSER and two other NCSO Corrections Deputies as they attacked VOLP's shoulder.

14. VOLP's head made first contact with the concrete floor, followed by his body, at which point one of the NCSO Corrections Deputies backed off as Defendant SASSER struck VOLP with an array of knee strikes and punches as VOLP lay painfully on the concrete floor, his arm restrained and twisted by another NCSO Deputy.

15. Plaintiff VOLP was handcuffed and placed in a restraint chair for approximately one hour and forty-five minutes. The NCSO nurse was then called to "decontaminate" VOLP while

in the chair but made no report, mention, or inquiry to the injuries sustained by the Plaintiff after the attack.

16. When removed from the restraint chair, VOLP was ordered to stand up by an NCSO Deputy.  VOLP complied by standing up and fell straight to the floor due to the injuries inflicted by Defendant SASSER.

17. After almost a half-hour of lying on the floor, NCSO Deputies called for rescue.  Nassau Rescue 30 transported VOLP to Nassau Baptist with his attacker, Defendant SASSER, as an escort.

18. At the conclusion of the incident, Defendant SASSER filed a report that he knew to be false in order to protect himself and in order to have VOLP punished.

19. At no time during the incident did VOLP present a threat to any Deputy, inmate, or personnel in the Nassau County Jail and Detention Center.

## COUNT I

### 42 U.S.C. 1983 – Excessive Use of Force by Defendant SASSER

20. Plaintiff VOLP realleges the allegations contained in Paragraphs 1 through 6, 8, and 9 through 19, as if fully set forth herein.

21. The force used by Defendant SASSER against Plaintiff was objectively inhuman and unnecessary, and constituted the unreasonable and excessive use of force in violation of Plaintiff's clearly established constitutional rights under the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983.

22. Defendant SASSER committed the acts described hereinabove in a gross disregard of Plaintiff's constitutional rights while acting under color of law, and specifically deprived Plaintiff of his constitutional right to be free from excessive police force under the Fourth Amendment.

23. As a result of Defendant SASSER's outrageous conduct, Plaintiff required immediate medical care.

24. As a further direct and proximate result of Defendant SASSER's conduct, Plaintiff suffered loss of his liberty and freedom, bodily injury and resulting pain and suffering, mental anguish, and medical expenses for treatment and care. These losses are either permanent or continuing, and Plaintiff will suffer the losses in the future, in violation of his civil rights. Plaintiff has also agreed to pay the undersigned a reasonable attorney fee for services provided.

WHERFORE, Plaintiff prays for the following relief:

    a.  Judgement for compensatory damages in the amount to be determined by a jury;

    b.  Judgement for exemplary or punitive damages;

    c.  Cost of suit;

    d.  Reasonable attorney fees, pursuant to 42 U.S.C § 1983;

    e.  Trial by jury as to all issues so triable; and

    f.  Such other relief as this Honorable Court may deem just and appropriate.

## COUNT II

**42 U.S.C. § 1983 Claim Against Defendant NCSO [Bill Leeper in his capacity as Sheriff of Nassau County, Florida] For Supervisory Liability**

25. Plaintiff VOLP realleges the allegations contained in Paragraphs 1 through 5, 7 and 9 through 19 as if fully set forth herein.

26. Defendant NCSO violated VOLP's Fourth Amendment freedom from being subjected to excessive force and Fourteenth Amendment substantive due process when NCSO failed to adequately train deputies/officers to respond to non-threatening inmates.

27. NCSO's chief policy maker, Sheriff Leeper, is responsible for the implementation and promulgation of official policies for NCSO. Further, Sheriff Leeper is responsible for the promulgation of policies and the implementation of training to maintain an effective police force that is capable and prepared to respond to non-threatening inmates.

28. NCSO was deliberately indifferent to its responsibility to adequately prepare its deputies/officers for encounters with non-threatening inmates.

29. NCSO is charged with improperly training officers with the available and necessary non-deadly-force skills that would allow officers to investigate a situation involving non-threatening inmates and also maintain their own safety.

30. NCSO was deliberately indifferent to its responsibility to create an effectively trained police force that could adequately respond to non-threatening inmates.

31. Thus, there was not a sufficiently trained officer available to reasonably and effectively respond to the Plaintiff. All of the acts and omissions of the insufficiently trained officers were inappropriate to the situation and caused this encounter to be escalated.

32. Further, the officer was not provided with sufficiently detailed policies and procedures to use in responding to a situation involving non-threatening inmates. This officer did not have the adequate direction or assistance with which to respond to the incident that occurred on July 1, 2015.

33. All of the above referenced failures are the responsibility of NCSO, which was deliberately indifferent to its responsibility to have appropriate policies and procedures in place, and to train and supervise officers employed by NCSO to respond to non-threatening inmates.

34. As a further direct and proximate result of the conduct described above, Plaintiff VOLP suffered loss of his liberty and freedom, bodily injury and resulting pain and suffering, mental anguish, and medical expenses for treatment and care. These losses are either permanent or continuing, and Plaintiff will suffer the losses in the future, in violation of his civil rights. Plaintiff has also agreed to pay the undersigned a reasonable attorney fee for services provided.

WHERFORE, Plaintiff prays for the following relief:

   a. Judgement for compensatory damages in the amount to be determined by a jury;

   b. Judgement for exemplary or punitive damages;

   c. Cost of suit;

   d. Reasonable attorney fees, pursuant to 42 U.S.C § 1983;

   e. Trial by jury as to all issues so triable; and

   f. Such other relief as this Honorable Court may deem just and appropriate.

## COUNT III

### Battery Against Defendant SASSER

35. Plaintiff VOLP realleges the allegations contained in Paragraphs 1 through 6, 8, and 9 through 19 as if fully set forth herein.

36. Defendant SASSER's actions against VOLP, when he used unreasonable and excessive force to push VOLP against the cinderblock wall twice, strike him with Defendant's knee,

and punch him with a depraved indifference to human life and conscious disregard for the safety of the general public, constituted an intentional unwelcomed and unprivileged touching of VOLP, and was undertaken in bad faith and with actual malice.

37. As a further direct and proximate result of the conduct described above, Plaintiff VOLP suffered loss of his liberty and freedom, bodily injury and resulting pain and suffering, mental anguish, and medical expenses for treatment and care. These losses are either permanent or continuing, and Plaintiff will suffer the losses in the future, in violation of his civil rights. Plaintiff has also agreed to pay the undersigned a reasonable attorney fee for services provided.

      WHERFORE, Plaintiff prays for the following relief:

      a. Judgement for compensatory damages in the amount to be determined by a jury;

      b. Judgement for exemplary or punitive damages;

      c. Cost of suit;

      d. Reasonable attorney fees, pursuant to 42 U.S.C § 1983;

      e. Trial by jury as to all issues so triable; and

      f. Such other relief as this Honorable Court may deem just and appropriate.

## COUNT IV

### Battery Against Defendant NCSO
**(Pleaded in the Alternative Pursuant to Federal Rules of Civil Procedure 8(d)(2).)**

38. Plaintiff VOLP realleges the allegations contained in Paragraphs 1 through 5, 7 and 9 through 19 as if fully set forth herein.

39. Defendant SASSER's actions against VOLP, when he used unreasonable and excessive force to push VOLP against the cinderblock wall twice, strike him with Defendant's knee, and punch him with a depraved indifference to human life and conscious disregard for the safety of the general public, constituted an intentional unwelcomed and unprivileged touching of VOLP.

40. Defendant SASSER was acting within the scope of his employment with NCSO.

41. As a further direct and proximate result of the conduct described above, Plaintiff VOLP suffered loss of his liberty and freedom, bodily injury and resulting pain and suffering, mental anguish, and medical expenses for treatment and care. These losses are either permanents or continuing, and Plaintiff will suffer the losses in the future, in violation of his civil rights. Plaintiff has also agreed to pay the undersigned a reasonable attorney fee for services provided.

WHERFORE, Plaintiff prays for the following relief:

    a. Judgement for compensatory damages in the amount to be determined by a jury;

    b. Judgement for exemplary or punitive damages;

    c. Cost of suit;

    d. Reasonable attorney fees, pursuant to 42 U.S.C § 1983;

    e. Trial by jury as to all issues so triable; and

    f. Such other relief as this Honorable Court may deem just and appropriate.

## COUNT V

**Negligent Hiring Against Defendant as to Defendant SASSER**

42. Plaintiff VOLP realleges the allegations contained in Paragraphs 1 through 5, 7 and 9 through 19 as if fully set forth herein.

43. At all times relevant and material hereto, Defendant SASSER was employed by Defendant NCSO as a Sworn Corrections Deputy.

44. NCSO knew or should have known at the time of hiring, the danger Defendant SASSER presented to Plaintiff and all other non-threatening persons.

45. As a result of Defendant NCSO's negligent hiring of Defendant SASSER, the injuries sustained by Plaintiff were within the zone of foreseeable risks.

46. As a further direct and proximate result of the conduct described above, Plaintiff VOLP suffered loss of his liberty and freedom, bodily injury and resulting pain and suffering, mental anguish, and medical expenses for treatment and care. These losses are either permanent or continuing, and Plaintiff will suffer the losses in the future, in violation of his civil rights. Plaintiff has also agreed to pay the undersigned a reasonable attorney fee for services provided.

WHERFORE, Plaintiff prays for the following relief:

    a. Judgement for compensatory damages in the amount to be determined by a jury;

    b. Judgement for exemplary or punitive damages;

    c. Cost of suit;

    d. Reasonable attorney fees, pursuant to 42 U.S.C § 1983;

    e. Trial by jury as to all issues so triable; and

    f. Such other relief as this Honorable Court may deem just and appropriate.

## COUNT VI

15 of 17

### Negligent Retention Against Defendant NCSO as to Defendant SASSER

47. Plaintiff VOLP realleges the allegations contained in Paragraphs 1 through 5, 7 and 9 through 19 as if fully set forth herein.

48. At all times relevant and material hereto, Defendant SASSER was employed by Defendant NCSO as a Sworn Corrections Deputy.

49. NCSO was aware, or should have become aware, of the problems with Defendant SASSER that indicated his unfitness for duty as a Sworn Corrections Deputy.

50. As a further direct and proximate result of the conduct described above, Plaintiff VOLP suffered loss of his liberty and freedom, bodily injury and resulting pain and suffering, mental anguish, and medical expenses for treatment and care. These losses are either permanent or continuing, and Plaintiff will suffer the losses in the future, in violation of his civil rights. Plaintiff has also agreed to pay the undersigned a reasonable attorney fee for services provided.

WHERFORE, Plaintiff prays for the following relief:

   a. Judgement for compensatory damages in the amount to be determined by a jury;

   b. Judgement for exemplary or punitive damages;

   c. Cost of suit;

   d. Reasonable attorney fees, pursuant to 42 U.S.C § 1983;

   e. Trial by jury as to all issues so triable; and

   f. Such other relief as this Honorable Court may deem just and appropriate.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff VOLP prays that the Court:

16 of 17

(a) Declare that the Defendant's acts and conduct constituted violations of the Fourth and Fourteenth Amendments of the U.S. Constitution under 42 U.S.C. § 1983.

(b) Judgement in Plaintiff's favor as to all claims for relief.

(c) Award compensatory damages for the injuries KYLE VOLP sustained due to Defendants' conduct for all economic and noneconomic damages for medical costs, pain, suffering, humiliation and emotional distress.

(d) Award punitive damages and exemplary damages, pre-judgement interest, post-judgement interest, cost, and other reasonable expenses incurred in maintaining this action, and the reasonable attorney's fees and cost incurred in maintaining this action.

(e) All other relief in law or equity to which Plaintiff is entitled and that the Court deems equitable, just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues within this Complaint. Respectfully submitted this 30 day of August, 2018.

_/s/ Rebecca H. Cozart_
**REBECCA H. COZART (FL Bar No. 0487570)**
**RONALD E. SHOLES, P.A.**
4981 Atlantic Boulevard
Jacksonville, Florida 32207
Phone: (904) 721-7575 Fax: (904) 721-7474
Primary Email:
**RonSholesPA-Team4-Eservice@youhurtwefight.com**
Attorney for Plaintiff